UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAKENZIE PAULY,<br><br>   Plaintiff,<br><br>  v.<br><br>STANFORD HEALTH CARE,<br><br>   Defendant. | Case No. 18-cv-05387-SI   (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 144 |

We are here on Plaintiff Makenzie Pauly's discovery letter brief at ECF No. 144, to which Defendant Stanford Health Care ("SHC") responded at ECF No. 149. The Court held a hearing on June 2, 2022, and now issues this order. There are five issues in dispute.

### 1. Color Copy of the MTPCR

In ECF No. 140, the Court ordered SHC to produce a color copy of the MTPCR. After all, SHC had submitted a declaration under penalty of perjury stating that "the original copy of the Medical Transport Program Call Record has various shadings of color, which accounts for the pixilation on the black and white copy," ECF No. 109-2 ¶ 3, and that SHC had "provided a *true*, *correct*, *full*, and unredacted copy of the Medical Transport Program Call Record involving Ms. Makenzie Pauly" to defense counsel. *Id*. ¶ 2.

Instead, SHC produced another black and white copy of the MTPCR, this time with a declaration explaining that a color copy used to exist when SHC used File Maker Pro, but the color copy was no longer retrievable after the File Maker Pro system was decommissioned in 2016. ECF No. 144-2, Ex. C ¶¶ 2-6. So, it turns out that the document produced to Pauly was not true, was not correct, and was not full. SHC itself understood that the pixilation in the black and white copy that made the document look like it might have been redacted was the result of the fact

1 that the original document was in color. ECF No. 109-2 ¶ 3. Given SHC's knowledge that the
2 lack of color altered the appearance of the document, SHC should not have represented that it had
3 produced a "true, correct [and] full" copy of the MTPCR.

As SHC has now acknowledged that it does not have the color copy anymore, there is nothing to order it to produce. Pauly is free to file a motion for sanctions over this issue if she chooses; the Court expresses no opinion about whether sanctions are appropriate.

### 2. Policies and Procedures

In ECF No. 140, the Court ordered SHC to produce its November 2008 and December 2008 policies and procedures relating to Pauly's treatment by March 21, 2022. Pauly says that SHC has not done so. However, attached as Exhibits D and E to Pauly's submission (ECF No. 144-2) are the policies that SHC was able to locate, plus declarations attesting to the search SHC did. SHC represents that prior to May 2018, all policies and procedures were maintained in individual departments, and after May 2018 they were moved to a centralized document management system. SHC's declarations state that SHC searched in both the centralized document management system and the Emergency Department, and SHC produced the only responsive document it was able to find. The Court does not understand SHC to be representing that all responsive documents from 2008 were retained.

Pauly advances no arguments that SHC's search of the documents that are currently available to it was inadequate, but instead asserts that the admission policies that were produced are "unrelated" to what she was seeking. Pauly's argument fails to distinguish between two different situations: (1) failing to search for and produce documents that a litigant has, and (2) failing to preserve documents from many years ago that the litigant no longer has. An order compelling production requires a litigant to produce whatever it has. A litigant does not violate such an order if it conducts a reasonable search and is able to find only some of the requested documents, or even no responsive documents. As SHC has explained (at least in general terms) the search it conducted for responsive policies and procedures, and Pauly does not challenge the adequacy of the search, the Court is unable to conclude that SHC violated the Court's order.

A completely different issue is whether SHC improperly failed to preserve documents

from 2008. If Pauly believes that to be true, she is free to move for sanctions. However, a sanctions motion for failure to preserve evidence requires more than just saying the defendant failed to retain relevant documents. It also requires, at a minimum, a showing that the defendant likely had other responsive documents in the first place and was under a duty to keep them, and that this failure to preserve prejudiced Plaintiff's case. Pauly has not yet advanced any arguments to that effect.

### 3. Audit Trail

Pauly argues that SHC failed to produce an audit trail in violation of Judge Illston's January 14, 2022 order. Pauly is mistaken. Judge Illston ordered SHC to provide an audit trail, and she explained: "*And what I would accept by way of an audit trail* is somebody who is personally knowledgeable of what you just said" – concerning the production of medical records – "to say what you just said and point out where it is in the other records if, in fact, it is in the other records." ECF No. 132 at 3:16-22 (emphasis added). SHC provided that in ECF No. 129.

### 4. Full EMTALA Central Log

Pauly argues that SHC did not provide the EMTALA Central Log as the Court ordered on November 9, 2021. *See* ECF No. 92. Specifically, Pauly states that SHC produced information concerning Pauly's arrival but did not produce information concerning her treatment or stabilization, which Pauly asserts is required to be kept in the EMTALA Central Log. SHC responds that it redacted information that does not concern Pauly. At the hearing SHC clarified that it produced all of the log entries it has that relate to Pauly. Specifically, those entries are contained on the tenth line of pages 54 and 55 of 93 in ECF No. 144-2 and show arrival time, arrival department, means of arrival, patient name, patient MRN, alias, gender, age, complaint, chief complaint, departure time, and disposition. All such fields are filled in for Pauly, except that no alias is indicated.

Pauly's response is to argue that SHC was required to include more information than this in the EMTALA Central Log, citing a 2019 State Operations Manual and an internal SHC document. SHC responds that its Central Log contained all of the information that it was required to contain back in 2008. For purposes of the current discovery dispute, the relevant issue is

whether SHC has produced the data in its EMTALA Central Log that is pertinent to Pauly. SHC says that it has, and Pauly provides no basis to think that SHC has withheld any relevant log entries. Whether SHC *should have* recorded additional information in its log in 2008 is immaterial to whether SHC has complied with its discovery obligation to produce the information that it has.

### 5. Sanctions

Finally, Pauly asks for sanctions. However, Civil Local Rule 7-8 provides that "[a]ny motion for sanctions . . . must comply" with certain requirements. One is that it be "separately filed," so a request for sanctions can't be combined with a discovery letter brief. Also, it has to be served on 35 days' notice (" . . . and the date for hearing must be set in conformance with Civil L.R. 7-2"), and "[t]he form of the motion must comply with Civil L.R. 7-2," so it can't be in a letter brief. In this case, these requirements are not mere formalities. Although Pauly faults SHC for not producing a color copy of the MTPCR, relevant policy and procedure documents, and additional information in the EMTALA Central Log, Pauly's letter brief does not develop any arguments concerning whether there was a duty to preserve such materials at the time (or in the case of the EMTALA records, to record it at the time) – an issue that would be important in a sanctions motion. Accordingly, the Court denies Pauly's request for sanctions without prejudice to filing a sanctions motion in conformity with Civil Local Rule 7-8.

**IT IS SO ORDERED.**

Dated: June 2, 2022

THOMAS S. HIXSON
United States Magistrate Judge